**JULIAN W. CURTIS CO., Inc., a corporation, Appellant,**

**v.**

**DISTRICT–REALTY TITLE INSURANCE CORPORATION, a corporation, Appellee.**

**No. 5006.**

District of Columbia Court of Appeals.

Argued March 16, 1970.

Decided July 20, 1970.

190 (2d Cir.), cert. denied, 351 U.S. 952, 76 S.Ct. 849, 100 L.Ed. 1476 (1956). *Cf.* Taylor v. United States, D.C.Mun. App., 180 A.2d 847 (1962).

Rex K. Nelson, Washington, D. C., for appellant.

Thomas Penfield Jackson, Washington, D. C., for appellee. Austin P. Frum, Washington, D. C., was on the brief. Arthur C. Elgin, Jr., Washington, D. C., also entered an appearance.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge.

This is an appeal from a judgment in the amount of $3,522.82 in favor of the District-Realty Title Insurance Corporation (appellee), in an action to recover money paid by the Title Insurance Company to appellant under a mistake of fact.

Curtis Company (appellant) was hired by one Walter L. Green to renovate two properties located on O Street, N.W., in the District of Columbia. The estimated cost of the project was $14,000 and payment was to be made on a cost plus basis. A dispute later arose between Green and Curtis Company when the cost rose substantially over the estimate, with Green charging that appellant's bills were not properly substantiated.

At about the time the dispute arose, Green arranged to refinance the two properties through a bank, with settlement to be made at appellee Title Company's offices. Before the funds held by appellee could be disbursed, it was necessary for Green to secure releases of liens on the properties. Green agreed with Curtis Company to pay $3,800.00 in return for releases of liens from Curtis and its subcontractors. On the back of Green's check for that amount was the notation: "For release of liens on properties No. 2124 and 2126 O Street, Northwest, Washington, D. C., *balance of $2908.33 subject to audit.*" (Emphasis added.) When the releases were delivered to appellee Title Company a few days later, a partial distribution of the escrowed loan funds was made, as directed by Green. At settlement, Green's accountant requested the settlement officer to "hold up" a check to appellant in the increased amount of $3,522.82 [1] for "a few days", as "the figure might change."

After about six months, appellant inquired of Mr. Mitchell, appellee's assistant vice-president in charge of settlements, concerning the withheld payment of $3,522.82. Mitchell examined the file and discovered there a "stale" check drawn to appellant in the amount of $3,522.82. Concluding that the disbursement of this check had been overlooked by the settlement clerk, Mitchell had a new check drawn and gave it to appellant.

Green later discovered that the Title Company had disbursed the sum and demanded payment to him of the identical amount. Upon inquiry of the settlement

1. Two later bills sent by Curtis Company to Green increased the sum in dispute (as noted on the back of Green's check) to this amount.

officer who had left the company after the original transaction, Mitchell learned of the instruction given by Green's accountant at the settlement.[2]  The company later paid Green, and instituted this action against appellant.

The trial court found, in substance, that appellant and Green were in dispute over the amount due appellant under their contract; that settlement (on the refinancing) was at appellee company's offices, and distribution was made on documents indicating that $3,522.82 was retained by the Title Company pending resolution of the dispute; that upon inquiry by appellant, the Title Company officer (Mitchell) later found an old check in the file drawn to Curtis; that he saw nothing in the file to indicate why the check had not been paid; that he did not consult the settlement officer concerning the unpaid check due to the latter's unavailability; that he was not advised by appellant of the existence of the dispute and, thus, was in part misled by him; and that, as a result of this combination of factors, he drew a new check in the amount of $3,522.82 and gave it to appellant.  The court concluded that these funds, which were being held in escrow, were paid by mistake to appellant; and that having later paid the same amount to Green on demand the Title Company had paid the amount twice and, consequently, was "out of its own pocket" the amount of $3,522.82.  Judgment was entered for the appellee Title Company on the ground the funds were disbursed due to mistake.[3]

Appellant contends that no mistake was made as the Title Company disbursed the funds in accordance with the instructions contained in the settlement file.  Further, says appellant, even assuming a mistake was committed it was a mistake of law and not of fact, and therefore recovery may not be granted.  Appellant also challenges as clearly erroneous the court's essential findings concerning the existence of the dispute between appellant and Green.[4]

The record shows that at the time the check was given to appellant a dispute existed between Green and appellant.  The Title Company officer, Mitchell, testified that when there is a dispute over money held by the Title Company the company does not release the disputed sum "unless there's a mutual agreement by all the interested parties."  In releasing the check Mitchell clearly was unaware of the existence of the dispute.  When Curtis appeared at the Title Company, the clerk who originally handled the settlement was not available.  Thinking the "stale" check had been inadvertently withheld from appellant, Mitchell had a new one issued and gave it to appellant.  This plainly involved a mistake of fact.  In addition, appellant did not inform Mitchell at the time that a dispute existed between appellant and Green.  Under these circumstances, the Title Company was entitled to recover.  The law is that one who pays money to another under an honest mistake of fact may, in the absence of an equitable defense,[5] recover the money paid.  Prowinsky v. Second National Bank, 49 App.D.C. 363, 265 F. 1003 (1920); Lanston v. American Security & Trust Co., D.C. Mun.App., 32 A.2d 482 (1943).

This was in no sense a mistake of law, as appellant contends.  Voulgaris v. Press, D.C.Mun.App., 116 A.2d 691 (1955), cited in support of this contention, is inapplicable.  In *Voulgaris*, a lessee voluntarily made rental payments while he had no access to the rented premises, which were undergo-

---

2.  A memorandum from Mr. Mitchell to his superior in the company was introduced into evidence.  It related the recollections of the departed settlement officer concerning the withheld funds.

3.  Though the court did not particularize, it is clear it was finding a mistake of fact, rather than law.

4.  Appellant also contends the court based its determination on "matters extraneous to the record" but we find this to be without merit.

5.  No equitable defense is established in this record.

ing repairs as the result of a condemnation notice served on the owners. This court held that since the money was paid under a mistaken view of the law but with full knowledge of the surrounding facts and circumstances there could be no recovery. In this case, however, there was a factual mistake in that the Title Company officer was unaware of the dispute at the time he released the check, else he would not have done so.

We have examined the record in the light of appellant's attack on the trial court's findings. We find that the court's findings of fact were supported by substantial evidence and are not clearly erroneous. Consequently, we must accept them. Freas v. Gitomer, D.C.App., 256 A.2d 573 (1969); D.C.Code 1967, § 17–305(a).

Affirmed.